MRS. RUDOLPH ENGLISH ET AL V. DUDLEY JONES ET AL

No. A-4819. Decided January 5, 1955.
Rehearing overruled February 9, 1955.
(274 S.W. 2d Series 666)

*Charles G. Layman,* of Corpus Christi, and *L. Hamilton Lowe,* of Austin, for petitioner.

The Court of Civil Appeals erred in holding that plaintiff should have his partial specific performance of the contract with abatement of purchase price when the undisputed evidence showed that the plaintiff knew at the time the contract was signed that it could not be performed by the defendant. Jackson v. Torrence, 83 Calif. 521, 23 Pac. 695; Haag v. Dixon, 151 Ky. 768, 152 S.W. 930; McKenzie v. Stutton, 250 Ala. 447, 34 So. 2d 825.

*Fischer, Wood, Burney & Nesbitt* and *Frank W. Nesbitt,* all of Corpus Christi, for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is an action by respondent Dudley Jones against petitioner Mrs. Rudolph English for specific performance of a written contract for the sale of real estate in so far as she is able to carry out its terms, with a proportionate abatement out of the purchase price for any outstanding undivided interests which she is unable to convey. In the alternative Jones sought damages for breach of contract. Two children of Mrs. English intervened, making common cause with her. In the trial before a jury judgment was rendered that Jones take nothing. Milton A. North, a real estate agent, sought to recover against Mrs. English a real estate commission of $450.00. The trial court denied him any recovery and that portion of its judgment was affirmed by the Court of Civil Appeals. He filed no application for writ of error, and so that phase of the case is not before us for consideration. On the appeal of Jones the Court of Civil Appeals, by a majority decision, reversed and rendered the judgment of the trial court in so far as it denied him any relief and granted him specific performance against petitioner Mrs. English, with a proportionate abatement of the purchase price. 268 S.W. 2d 686.

By the terms of the contract Jones agreed to buy and Mrs. English agreed to sell certain described real estate in the city of Corpus Christi for a cash consideration of $9,500.00. The property belonged to the community estate of Mrs. English and her deceased husband. After his death she purchased a one eighth interest owned by one of the children, and at the time she made the contract she was the owner of five-eighths undivided interest and surviving children the owners of the remaining interest. By the judgment of the Court of Civil Appeals Mrs. English is to be paid five-eighths of the total consideration and is ordered to convey to Jones her five-eighths undivided interest in the property. Upon consideration of the application for writ of error we were of the tentative opinion that the majority of the Court of Civil Appeals had fallen into error in decreeing partial specific performance, but upon more mature consideration after submission of the case we have concluded that the judgment of that court was correct and should be affirmed.

A great many special issues were submitted to the jury, but after considering and evaluating them and the answers of the jury thereto, it appears that most of them submitted either questions of law or issues about which there was no conflicting

evidence. Both the majority and the minority of the Court of Civil Appeals must have come to that conclusion regarding the issues, for their opinions practically ignore them. It also appears that Mrs. English in her brief in the Court of Civil Appeals did not regard the jury verdict as controlling.

The general effect of the answers of the jury is reflected by these observations: The jury found that the reasonable market value of the property in question on the date of the contract was $11,000.00, but that the consideration provided by the contract was not grossly inadequate; that Mrs. English signed the contract by reason of undue influence exerted upon her by Milton A. North, but that North was not the agent of Jones; that Jones did not exert undue influence upon her, nor was he a party to a conspiracy with North to exert undue influence upon her. The jury found that it would be inequitable to decree specific performance, but that is not a question for the jury to decide. The jury found that on and prior to the date of the contract Jones did not intend to buy less than the whole of the property and Mrs. English did not intend to agree to sell less than the whole of the property. Unquestionably, both parties intended to have full title pass to Jones, but that matter becomes unimportant in the light of the facts hereinafter considered, which show that at the time the contract was made Mrs. English could have caused the entire title to be conveyed to Jones, and same would have been conveyed to him but for her own voluntary acts. The jury found that Mrs. English believed and relied upon the representation by Jones that the contract price was the reasonable market value of the property. That was merely a matter of opinion about a question concerning which Mrs. English was as well, if not better informed than was Jones. The record does not present a case of an experienced businessman dealing with an inexperienced widow. Rather it reflects that Mrs. English is a woman of considerable experience in business matters and familiar with the property in question and the uses to which it could be put. She had rented it several times to different tenants and knew its rental value, and at one time she operated a bakery on it.

This brings us to a consideration of the questions about which the members of the Court of Civil Appeals disagreed, as reflected by two well-considered opinions.

■ There is no rule in actions for specific performance better established in this State than that approved by this court many years ago in Heirs of Roberts v. Lovejoy, 60 Texas 253, 257,

in this language: "The general rule (for it is not universal) in all such cases is that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate." Hazzard v. Morrison, 104 Texas 589, 143 S.W. 142; Puckett v. Hoover et al, 146 Texas 1, 202 S.W. 2d 209; Carnell v. Kinser, Texas Civ. App., 196 S.W. 2d 941, error refused; Story, Equity Jurisprudence, 10th Ed., Vol. 1, Sec. 779.

■ The contentions that the contract under review is a mere option and that it is lacking in mutuality are not sustained by the authorities. The opinion of the majority below overruling those contentions is approved. On the question of mutuality these additional cases are cited: Langley v. Norris, 141 Texas 405, 173 S.W. 2d 454; 148 A.L.R. 555; and Adams v. Abbott, 151 Texas 601, 254 S.W. 2d 78.

We also agree with the majority that to enforce specific performance in this case would not be to make a new contract for the parties. To accept the theory that it would have that effect would be to deny the validity of the established rule of partial specific performance quoted above.

The argument is pressed here that the general rule giving the vendee the right of partial specific performance with an abatement from the purchase price cannot be invoked by a purchaser who had notice that the vendor did not have full title to the property at the time of the making of the contract. That qualification to the general rule has been recognized by eminent text writers. Much has been written on the subject. In 148 A.L.R., beginning on page 563 and ending on page 580, is a very exhaustive annotation on the question, with the citation of many authorities. On page 572 the author of the annotation makes this observation: "But most of the cases by their silence on the point, and sometimes by direct statements or implications, negative the idea that mere knowledge or notice that the seller did not presently have complete title is a bar to granting the purchaser partial specific performance." Another extended annotation dealing with the same subject may be found in 154 A.L.R., pages 767-788, in which on page 774 the author, after a review of the cases relied upon by the text writers in support of the theory that the rule of partial specific performance is subject to the limitation just mentioned, summarizes as follows:

"On their facts, however, few cases give convincing support to that proposition." We concur in those conclusions. The limitation logically should be recognized in states which base the doctrine of partial specific performance upon the ground of estoppel. If a purchaser has knowledge that the vendor has not title to the whole of the property he could not invoke the doctrine of estoppel, for in entering into the contract he did not rely upon any representation, express or implied, that the vendor did own the complete title. In this State we have not grounded the right of a purchaser to partial specific performance upon estoppel. We have never declined to enforce partial specific performance merely because the purchaser knew of the lack of authority in the vendor to convey full title. Ward v. Walker, Texas Civ. App., 159 S.W. 320, error refused; Paul v. Stanolind Oil & Gas Co., Texas Civ. App., 83 S.W. 2d 808, error refused; Hays et al v. Marble, Texas Civ. App., 213 S.W. 2d 329, error dismissed; Dittoe v. Jones, 220 S.W. 2d 315, writ refused, n.r.e.

■ In some instances that knowledge on the part of the purchaser might be a factor to be considered in determining whether to enforce partial specific performance, but we cannot accept the doctrine that such knowledge on the part of a purchaser bars his right to partial specific performance in all cases. Clearly it should not do so under the facts of the instant case. We question whether in any of the states which recognize the limitation above mentioned relief would be denied the purchaser under the facts of the instant case. It appears from the record that Mrs. English had purchased the undivided interest in the property of her son, William, for the sum of $150.00. Prior to and at the time of the making of the contract the other children were willing to join in a sale of the property, but Mrs. English conceived the idea that, since William had received only $150.00 for his share, he should be paid from the proceeds of the sale enough money to make his share equal to that of the other children. She had purchased that interest and whatever profit was realized therefrom would go to her. It would appear that, if she thought William was entitled to additional money, it should come out of the portion going to her; but her position was that the other children should contribute thereto. Her son, Fred, refused to execute the deed under those circumstances, and then the daughter agreed with her mother and refused to sign unless Fred would agree to the distribution of the proceeds according to the mother's desires. When the parties executed the contract Jones did not know that the defendant would be unable to have full title conveyed to him, but had good reason to believe to the contrary. At that time Mrs. English, as a matter of fact, was in

a position to have full title conveyed to Jones. The reason full title was not conveyed to him was because of her insistence that a portion of the proceeds belonging to the other children be paid to William, who had no interest in the property.

■ The rights of the purchaser under the contract must not be overlooked. In determining whether or not to enforce partial specific performance the decisive question should be whether, in view of the rights of both parties, it would be more equitable to enforce performance than to deny it. In this case it would be inequitable to deny Jones' right to specific performance. He has done no wrong and is willing to accept such title as Mrs. English can convey and pay her the same amount which she would have received had her children joined her. On the other hand, Mrs. English cannot be heard to say that it would be inequitable to enforce partial specific performance against her, since but for her own fault full title could have been transferred to Jones.

The judgment of the Court of Civil Appeals awarding partial specific performance with a proportionate abatement out of the consideration is affirmed.

Opinion delivered January 5, 1955.

Rehearing overruled February 9, 1955.